

## DEBIT NOTE / COMMISSION STATEMENT

### HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

**Attention :**

**Eric Seyfried**

**Marsh Risk & Insurance Services**
**1166 Avenue of the Americas**
**New York, New York 10036-2774**

| | |
|---|---|
| **Your Reference :** | **Transaction :** Renewal Schedule |
| **Insured :** Cox Enterprises, Inc. | **Effective Date :** December 1st, 2011 |
| **Address :** 6205 Peachtree Dunwoody Road, NE |
| Atlanta, Georgia 30328 |

| | | |
|---|---|---|
| **Total amount :** | $ | ███████ |
| **Commission due to you :** | $ | ██████ █ |
| **Total due:** | $ | ███████ |

Please remit payment within agreed upon credit terms.  If statement reflects a return premium, please contact our accounting department for further assistance via the email address usaccountsreceivable@hiscox.com
Kindly reference our policy number(s) on all checks, wire transfers and remittances.
Please email remittance advice for all premium payments to USAccountsreceivable@hiscox.com.
Please email all refund requests to USARefunds2@hiscox.com.

**Wire transfer instructions:**
JP Morgan Chase Bank, NA
New York, NY
ABA # 021000021
Acct # 800795643
**For Mail Sent via Fedex, DHL, UPS (aka overnight payments):**
JP Morgan Chase
Attn R1 - lbx5945
4 Chase Metrotech Center 7Fl
Brooklyn NY 11245
Tele 718-242-0716

**For 1st Class Mail:**
Hiscox Inc.
PO Box 5945
New York, NY 10087-5945

## EXHIBIT
## B



HISCOX

# DECLARATION

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

This declaration confirms the renewal of your insurance with us for the policy period set out below. Your insurance with us for this period is on the basis of the wording (as identified below) and any amendments that have been agreed to this wording are identified on this declaration.

### I.  GENERAL DETAILS

| | |
|---|---|
| **Policy Number** | US UUA 2619952.11 |
| **Insured** | Cox Enterprises, Inc. |
| **Insured's Contact Address** | 6205 Peachtree Dunwoody Road, NE Atlanta, Georgia 30328 |
| **Underwriter** | Hiscox Insurance Company Inc |
| **Insured's Broker** | Marsh Risk & Insurance Services 1166 Avenue of the Americas New York, New York 10036-2774 |
| **Insured's Payment** | Payment by Broker's Account |
| **Premium** | ▇▇▇▇▇ |

### II.  COVERAGE DETAILS

| | |
|---|---|
| **Policy Wording** | US TMT Multimedia Liability (Admitted) |
| **Policy Period** | December 1st 2011 to December 1st 2012 at 12:01 am local time at the insured's contact address |

### III.  SPECIFIC COVERAGE DETAILS

#### MULTIMEDIA (ADMITTED)

**Definition of "Covered Media."**  Where the phrase "covered media" appears within this policy (whether in the singular or plural), it shall solely mean the following:

> All publications, programming and other communications (but not including ordinary business communications not directly related to the preparation, dissemination or promotion of your multimedia products) produced or disseminated by you; including but not limited to content of personal appearances by you and all content disseminated via web sites owned or operated by you.

| | |
|---|---|
| **Policy Limit** | $ 15,000,000 Single Aggregate Limit, inclusive of defense costs and damages. |



| **DECLARATION** |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

**Retention**              $ 500,000 Each and every claim inclusive of defense costs and damages.

**Geographical Limits**     Worldwide

**Applicable Courts**       Worldwide

# DECLARATION

**HISCOX**

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| ENDORSEMENTS - Applicable to the whole policy | |
|---|---|
| Endorsement 1 | E60.1 Cox Amendments Endorsement |
| Endorsement 2 | E62.1 Professional Services Endorsement (Occurrence) |
| Endorsement 3 | E68.1 Cox Claims Reporting Endorsement |
| Endorsement 4 | E69.1 Technology Activities with Breach of Contract Endorsement |
| Endorsement 5 | E70.1 Additional Insured Endorsement |
| Endorsement 6 | E2386.1 Social Media Extension MM |
| Endorsement 7 | E2404.1 Subpoena Defense Costs Coverage Endorsement |
| Endorsement 8 | E2405.1 Broad Form Errors and Omissions (BI/PD) Endorsement MM/MAC |
| Endorsement 9 | E2409.1 Reporter's Shield Enhancement Endorsement |
| Endorsement 10 | E2416.1 Amended Definition of "Acquired Entity" Endorsement |
| Endorsement 11 | E2421.2 Spousal, Civil Union & Domestic Partner Extension End MM/MAC |
| Endorsement 12 | E2430.1 Remove Settlement Clause Endorsement |
| Endorsement 13 | E2444.1 Specific Exclusion Endorsement |
| Endorsement 14 | E2484.1 Premium Payment Warranty |
| Endorsement 15 | E2531.1 First Amendment Enhancement Endorsement MM |
| Endorsement 16 | E2816.2 Georgia Amendatory Endorsement MM/MAC |

IN WITNESS WHEREOF this Declarations has been signed at New York, New York





| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

---

**Policy Number: US UUA 2619952.11**

---

| Endorsement 1 | **E60.1 Cox Amendments Endorsement** |
| --- | --- |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. Under What Has To Go Wrong (Section II), Media, personal injury and negligent content liability, paragraph l. is deleted in its entirety and replaced with the following:

l. negligent supervision of an employee, but only when asserted in conjunction with and based on the same factual allegations as a **claim** under (a) - (m); and/or

2. Also under What Has To Go Wrong (Section II), Media, personal injury and negligent content liability, paragraph k. is deleted and replaced with the following:

k. disclosure of a trade secret, but only where the disclosure alleged was to the public within **covered media**;

3. With respect to What We Will Not Pay (Section VI), Exclusions, paragraphs c. and n., no conduct of any of **you** will be imputed to any other of **you** to determine the applicability of exclusion c. or n.

4. YOUR OBLIGATIONS TO US (Section VII), Your Representations, of the policy is amended as necessary to include the following:

The unintentional failure by **you** to provide accurate and complete representations as of the inception of the policy will not prejudice the coverages afforded by this policy.

5. Under Definitions (SectionVIII), "Advertising" is deleted and replaced with the following:

"Advertising" means advertising, marketing, publicity, or promotion of the **insured's**, **existing subsidiary's**, or **acquired entity's** own goods and services and of the goods and services of their clients.

6. Under General Matters (Section IX), Alternate dispute resolution is deleted in its entirety and replaced with the following:

**We** and **you** agree that any dispute arising out of or relating to this policy, including but not limited to its construction, application and validity, or any breach thereof, shall be submitted to non-binding mediation prior to the commencement of litigation by either party. **We** and **you** shall mutually agree on the choice of a mediator, as well as a location for mediation. Each party shall bear its own fees and costs in connection with any mediation but the fees and expenses of the mediator shall be shared equally by the parties.

7. Under General Matters (Section IX), the Severability clause is deleted in its entirety.



| DECLARATION |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

---

**Policy Number:  US UUA 2619952.11**

---

8. Under General Matters (Section IX), the following is added:

Choice of Law
This policy, including its construction, application and validity, is governed by the laws of
the State of Georgia without reference to that state's choice of law principles.

The title and any headings in this endorsement are solely for convenience and
form no part of the terms and conditions of coverage.

**Effective Date:**    **12/01/2011**



| **DECLARATION** |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| Endorsement 2 | **E62.1 Professional Services Endorsement (Occurrence)** |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. WHAT HAS TO GO WRONG (Section II) of the policy is amended to include:

**Professional Services**

The performance during the **policy period** of **professional services** for a **client** by **you** or anyone on **your** behalf, including **your** subcontractors and outsourcers, results in a **claim** against **you** that arises from any actual or alleged breach of duty, negligent act, negligent error, or negligent omission, regardless of when such **claim** is made and where such **claim** is brought.

2. For the purposes of the coverage provided by Section 1 of this endorsement only, WHAT WE WILL NOT PAY (Section VI), paragraph (o), of the policy is amended to read:

(o) any breach of any written, oral, express or implied contract or warranty; provided, however, that this exclusion will not apply to any covered liability **assumed under agreement**; to any covered portion(s) of a **claim** under WHAT HAS TO GO WRONG (Section II) Media, Personal Injury & Negligent Media Content Liability (b), (c), (g), (h) or (i) of the policy; or to any legal obligation **you** would otherwise owe in the absence of such contract or warranty;

3. For the purposes of the coverage provided by Section 1 of this endorsement only, WHAT WE WILL NOT PAY (Section VI), Exclusions, of the policy is amended by adding the following:

**We** will not make any payment, including **defense costs** and **damages**, toward any portion(s) of any **claim**:

AA. for, alleging, or arising from:
(i) any breach of an express warranty, guarantee, or contract, including but not limited to any agreements to refund, repurchase, or indemnify any person or entity;

(ii) any breach of any exclusivity, non-competition, non-solicitation, or other similar commercial terms in **your** contract with a **client**;

BB. for, alleging, or arising from any defect in any software, hardware, firmware, or associated network cabling that is solely caused by a third party, including but not limited to any third party software supplier, manufacturer or originator;



**DECLARATION**

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

CC. for, alleging, or arising from **your** commercial decision to cease providing a particular product or service but only if **you** are contractually obligated to continue providing such product or service;

DD. for, alleging, or arising from any racketeering or conspiracy law, including but not limited to any actual or alleged violations of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Section 1961 et seq., any similar state statute, or any amendments thereto or any rules or regulations promulgated under any of them;

EE. for, alleging, or arising from any chargeback, liability or fee incurred by **you** or **your client** as a result of a merchant service provider, including any credit card company or bank, wholly or partially reversing or preventing a payment transaction;

FF. made against **you** by any person or entity falling within the definition of **you**; however, this exclusion will not apply to any **claim** based on a liability to an independent third party directly arising out of the performance of your defined **professional services** but which is brought against **you** via an **existing subsidiary**, parent or sister company;

GG. for, or arising from any armed struggle, civil unrest or conflict or any nationalization, confiscation, requisition, expropriation, appropriation, seizure or destruction of property by or under the order of any government or public or local authority;

HH. for, alleging, or arising from any act or threatened act of terrorism, including but not limited to the use of force or violence, of any person(s) or group(s) of persons whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear;

II. directly or indirectly arising out of any activities occurring prior to the applicable **retroactive date** (if any);

JJ. for, alleging, or arising from any electrical or mechanical breakdown, electrical disturbance, wear and tear or gradual deterioration;

KK. for, alleging, or arising from any wrongful taking or intentional disclosure of proprietary information, including but not limited to trade secrets or other confidential business information;

LL. for, alleging, or arising from any violation of the responsibilities, obligations or duties imposed by Employee Retirement Income Security Act of 1974, or amendments thereto or similar provisions of any federal, state or local statutory law or common law;



| **DECLARATION** |

### HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

MM. for, alleging, or arising from any failure or inability to pay any bond, debt, financial guarantee or failure to pay or collect funds;

NN. for, alleging, or arising from any financial or investment advice given or predictions of financial performance;

OO. for, alleging, or arising from any legal, audit or accountancy advice or services;

PP. for, alleging, or arising from any real estate services or advice;

QQ. for, alleging, or arising from any pharmaceutical or medical advice or treatment; or

RR. for, alleging, or arising from **your** manufacture, sale, supply, installation or maintenance of any product.

4. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII) of the policy is amended to include the following terms:

"Client" means any person or entity with whom **you** have contracted to provide **your** services or deliverables that expressly fall within **your professional services**.

"Professional services" means commercial printing for others for a fee; advertising and marketing services for others for a fee; design, creation, hosting and management of web sites or communication devices for others; application development for others

5. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII), Damages, of the policy is amended by adding the following:

"Damages" also does not include:

6. the return or restitution of all or any portion of fees, commissions, profits, or charges for goods provided or services rendered by **you**, or anyone performing **professional services** on **your** behalf;

7. the costs of recall, repair or correction of any **professional services**.



| | DECLARATION |
|---|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

6. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII), You/Your of the policy is deleted and replaced by the following:

"You and Your" means:

1. the **insured**, any **existing subsidiary** or any **acquired entity**;

2. any person who was, is or becomes a director, officer, trustee, partner in, or employee of the **insured**, any **existing subsidiary** or any **acquired entity** but only in respect to **claims** arising out of the course and scope of their duties as such and in the event of their death, incapacity or bankruptcy, any **claim** against their estates, heirs, legal representatives or assigns shall be considered a **claim** against them;

3. any person or entity that takes legal control of the insured, existing subsidiary or acquired entity upon the insolvency or bankruptcy of the **insured**, **existing subsidiary** or **acquired entity**;

7. For the purposes of the coverage provided by Section 1 of this endorsement only, GENERAL MATTERS (Section IX), Date of Performance of Media Activities, of the policy is deleted in its entirety.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

**Effective Date:     12/01/2011**



| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| Endorsement 3 | **E68.1 Cox Claims Reporting Endorsement** |
| --- | --- |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1.  WHAT YOU MUST NOTIFY AND WHEN (Section III) of the policy is hereby deleted in its entirety and replaced with the following:

**You** must notify **us** of **claims** against **you** as soon as practicable after such **claim** is first made and the Risk Manager, Chief Financial Officer, General Counsel's office, or Chief Technology Officer first knows or should have known of such **claim**.  Proper notification must be sent in accordance with the instructions set forth below.

Please provide notification of any claim(s), subpoenas **or first amendment restrictions** to:

Hiscox, 520 Madison Ave,  32nd Floor, New York, NY 10022
Email:  tmtclaims@hiscox.com
Fax: 212.922.9652
Telephone: 1.877.544.7269

2.  Notwithstanding the foregoing, it is not necessary to report a **claim** where no lawsuit has been filed or a subpoena or a **first amendment restriction** until the cost of resolving such **claim**, subpoena or **first amendment restriction** inclusive of all **defense costs** has reached $50,000, and then you must notify us of such **claim,** subpoena or **first amendment restriction** as soon as practicable thereafter.

The titles and headings of this endorsement are solely for ease of reference and do not form any part of the terms and conditions of coverage.

**Effective Date:      12/01/2011**



| | DECLARATION |
|---|---|

# HISCOX

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

| Endorsement 4 | **E69.1 Technology Activities with Breach of Contract Endorsement** |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. WHAT HAS TO GO WRONG (Section II) of the policy is amended to include

**Technology liability protection**

The performance of **technology activities** on or after the **retroactive date** by **you** or anyone on **your** behalf, including **your** subcontractors and outsourcers, results in a **claim** first made against **you** during the **policy period**, regardless of where such **claim** is brought, provided that **you** report the **claim** to **us** during the **policy period** or any applicable extended reporting period, for any actual or alleged:

a. unintentional breach of a written contract brought by a **client**;

b. negligence or breach of any duty to use reasonable care, including but not limited to negligent transmission of a computer virus, worm, logic bomb or Trojan horse or negligence in connection with a denial of service attack, or negligent misrepresentation;

c. intellectual property infringement (but not any patent infringement or trade secret misappropriation), including but not limited to copyright infringement, trademark infringement, trademark dilution, trade dress infringement, publicity rights violations, cybersquatting violations, moral rights violations, any act of passing-off, or any misappropriation of formats, characters, trade names, character names, titles, plots, musical compositions, voices, slogans, graphic material or artwork;

d. unfair competition, deceptive business practices or false designation of origin but only when asserted in conjunction with and based on the same allegations as a **claim** falling under the immediately preceding subparagraph (c) above;

e. breach of any duty of confidentiality, invasion of privacy or violation of any other legal protections for personal information, including but not limited to false light, intrusion upon a person's seclusion, public disclosure of a person's private information, misappropriation of a person's picture, name, voice or identity for commercial gain, unauthorized interception or recording of images or sound in violation of an anti-wiretapping statute; or

f. defamation, including but not limited to libel, slander, trade libel, product disparagement, or injurious falsehood.

2. For the purposes of the coverage provided by Section 1 of this endorsement only, WHAT YOU MUST NOTIFY AND WHEN (Section III) of the policy is hereby deleted in its entirety and replaced with the following:

**A. Claims**

**You** must notify **us** of **claims** against **you** as soon as practicable and in any event within the **policy period**.  Proper notification of **claims** must be sent in accordance with the notification details set forth on the Declarations.



| DECLARATION |
|---|

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

### B. Potential claims

**You** may notify **us** of **potential claims** under this policy. If **you** do, such notification must be provided as soon as practicable and within the **policy period** or any applicable extended reporting period, and must to the fullest extent possible identify the particulars of the **potential claim**, including identifying the potential claimant(s), the likely basis for liability, the likely demand for relief, and any additional information about the **potential claim** that we reasonably request. If such a **potential claim** notification is made to **us** then we will treat any **claim** arising from the same particulars as that notification as if it had first been made against **you** on the date **you** properly notified **us** of it as a **potential claim**, even if that **claim** is first made against **you** after the **policy period** has expired. Proper notification of **potential claims** must be sent in accordance with the instructions set forth under the Declarations.

### C. Automatic extended reporting period

If **we** renew this policy, then **we** agree to accept **your** proper notification of **claims** and **potential claims** under this policy for up to 30 days after the **policy period** has expired, provided **you** first become aware of the **claim** or **potential claim** during the last 30 days of the **policy period**.

If **we** cancel this policy or do not offer renewal terms for this policy, then **we** agree to accept **your** proper notification of **claims** and **potential claims** under this policy up to 30 days after the **policy period** has expired, provided **you** first become aware of the **claim** or **potential claim** during the last 30 days of the **policy period** or during the 30 days immediately following the **policy period**, and such **claim** or **potential claim** directly arises from circumstances or events first occurring after the **retroactive date** but before the end of the **policy period**.

The automatic extended reporting periods described in this section do not apply unless **we** are notified of such **claim** or **potential claim** as soon as practicable but no later than 30 days from the date **you** first learned of the **claim** or **potential claim**, and they do not apply to any policy that **we** have cancelled or refused to renew due to **your** non-payment of premium or failure to comply with the terms of this policy.

It is agreed that the applicable extended reporting period(s) set forth in this section shall be superceded by any conflicting applicable law that requires **we** provide to **you** a longer extended reporting period.

3. For the purposes of the coverage provided by Section 1 of this endorsement only, WHAT WE WILL NOT PAY (Section VI), paragraph (m) of the policy is deleted and replaced with the following:

(m) any damage to, destruction or loss of use of any tangible property; however, this exclusion will not apply to any covered **claim** for trespass or to any damage to electronically stored data, or destruction or loss of use of electronically stored data;



| DECLARATION |
| --- |

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

4. For the purposes of the coverage provided by Section 1 of this endorsement only WHAT WE WILL NOT PAY (Section VI), paragraph (o) of the policy is deleted and replaced with the following:

(o) any written, oral, express or implied contract or warranty; however, this exclusion will not apply to any:

(i) covered liability **assumed under agreement**;

(ii) covered portion(s) of a **claim** under WHAT HAS TO GO WRONG (Section II), Media, personal injury & negligent media content (b), (c), (g), (h) or (i) of the policy;

(iii) legal obligation **you** would owe in the absence of such contract or warranty; or

(iv) **technology claim**.

5. For the purposes of the coverage provided by Section 1 of this endorsement only, WHAT WE WILL NOT PAY (Section VI), Exclusions, of the policy is amended by adding the following:

**We** will not make any payment, including **defense costs** and **damages**, toward any portion(s):

AA. of any **technology claim** alleging or arising from:

(i) any contractual liability where at the time such contract was entered into **you** were aware or reasonably ought to have been aware that there were not sufficient technical, logistical, or financial resources to perform the contract as promised, including **your** promise to meet a certain performance standard under a service level agreement;

(ii) any breach of a warranty or guarantee; however, this exclusion will not apply to the following:

a. **your** warranty or guarantee that **you** will use reasonable care and skill in the performance of a contract;

b. **your** warranty or guarantee that any software, hardware, firmware, or related services falling within **your technology activities** will not infringe another's intellectual property rights;

c. any implied warranty or similar statutory term requiring any software, hardware, or firmware falling within **your technology activities** to meet a certain standard of quality, safety or fitness, even if **you** have expressly warranted that such software, hardware, or firmware will meet the legally required standard to which **you** are subject;

d. **your** warranty or guarantee that any software, hardware, firmware, or related services falling within **your technology activities** will substantially conform to any material, written specifications and performance standards forming part of the contract between **you** and **your client**; or

(iii) any breach of any exclusivity, non-competition, non-solicitation, or other similar commercial terms in **your** contract with a **client**;



| DECLARATION |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

BB. of any **technology claim** resulting in an award for consequential, special or indirect damages, or loss of claimant's profits. However, this exclusion will not apply to:

(i) breach of a warranty made by **you** that any software, hardware, firmware, or related services falling within **your technology activities** will not infringe another's intellectual property rights;

(ii) breach of an express contractual provision that is solely triggered by **your** disclosure of **your client's** confidential information;

(iii) a court's award of consequential, special or indirect damages resulting from **your** contractual disclaimer of such damages being deemed unenforceable by the same court issuing the award;

(iv) any contract between **you** and a governmental entity that has insisted, in writing, that it retain the right to recover consequential damages as a precondition to the execution of the contract;

CC. of any **technology claim** for, alleging, or arising from any defect in any software, hardware, firmware, or associated network cabling that is solely caused by a third party, including but not limited to any third party software supplier, manufacturer or originator; provided, however, that this exclusion will not apply to: (1) covered **defense costs** incurred by **you** to defend such portions of a **claim** but only until (if ever) there is a finding in any legal proceeding (including any arbitration) or any admission that the defect at issue is solely caused by a third party, at which time **you** shall reimburse us for all **defense costs** that **we** have paid toward that **claim**, or (2) any amount **you** satisfy **us** that **you** are legally able to recover under a written contract;

DD. of any **technology claim** for, alleging, or arising from any costs or expenses involved in the repair, upgrade, correction, recall or replacement of any software, hardware, firmware, or associated network cabling, or any costs or expenses relating to **your** legal obligation to comply with an injunction; however, this exclusion will not apply to any portion of a judgment requiring **you** to pay direct damages to **your client** for breach of contract;

EE. of any **technology claim** for, alleging, or arising from **your** commercial decision to cease providing a particular product or service but only if **you** are contractually obligated to continue providing such product or service;

FF. of any **technology claim** for, alleging, or arising from any self-replicating, malicious code that was not specifically targeted to **your** system; however, this exclusion will not apply to any covered portion of any **technology claim** for negligent transmission of a computer virus, worm, logic bomb, or Trojan horse;

GG. of any **technology claim** for, alleging, or arising from any commercial dispute with **your** business partner or business associate, including but not limited to any reseller, distributor, original equipment manufacturer, third-party sales agent, systems integrator, or joint venturer, but only to the extent such a **claim** is based upon:



| DECLARATION |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

(i) a commission or royalty, or any other term upon which such partner or associate is to be compensated in connection with doing business with **you**, or any compensation or remuneration promised or owed by **you** pursuant to those terms; or

(ii) **your** decision to cease doing business with such a partner or associate;

HH. of any **technology claim** for, alleging, or arising from any chargeback, liability or fee incurred as a result of a merchant service provider, including any credit card company or bank, wholly or partially reversing or preventing a payment transaction;

II. of any **technology claim** for, alleging, or arising from any failure of or interruption in service provided by an internet service, telecommunications, or other utility provider; however, this exclusion will not apply to any internet service interruption where **you** are the sole provider of that service as part of **your technology activities**;

JJ. of any **technology claim** made against **you** by any person or entity falling within the definition of **you**; however, this exclusion will not apply to any **claim** based on liability to an independent third party directly arising out of the performance of **your technology activities** but which is brought against **you** via an **existing subsidiary**, parent or sister company;

KK. of any **technology claim** for, alleging, or arising from any armed struggle, civil unrest or conflict or any nationalization, confiscation, requisition, expropriation, appropriation, seizure or destruction of property by or under the order of any government or public or local authority;

LL. of any **technology claim** for, alleging, or arising from any act or threatened act of terrorism, including but not limited to the use of force or violence, of any person(s) or group(s) of persons whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear;

MM. of any **technology claim** directly or indirectly arising out of any activities occurring prior to the applicable **retroactive date** (if any);

NN. of any **claim** under WHAT HAS TO GO WRONG (Section II) Media, personal injury & negligent media content liability of the policy, even if such **claim** arises in whole or in part from **your technology activities**; or

OO. of any **technology claim** for, alleging, or arising from telecommunications services and internet service provider services.

6.For the purposes of the coverage provided by Section 1 of this endorsement only, all references to "**media activities**" in YOUR OBLIGATIONS TO US (Section VII) of the policy are hereby deleted and replaced with the phrase "**media activities or technology activities**".

7. For the purposes of the coverage provided by Section 1 of this endorsement only, under YOUR OBLIGATIONS TO US (Section VII), Satisfying Your Retention of the policy, the following sentence is added to the second paragraph:

All **technology claims** that are related will be considered as having been made on the date of **your** first proper notification to **us**.



| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

8. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII) of the policy is hereby amended to add the following:

"Client" means any person or entity with whom **you** have contracted to provide services or deliverables that expressly fall within **your technology activities**.

"Potential claim" means any matter reasonably likely to lead to a **technology claim**.

"Retroactive date" means 12/1/2010 for analysis, design, programming or integration of information systems; data processing; information technology consulting; licensing of computer software; marketing, selling, distributing, installing, maintaining, support and training in the use of electronic or computer related hardware and software, for others; web-based automobile dealership inventory tracking and valuation solutions, sales management, systems integration, data storage services for others; 7/18/2006 for $3,000,000 Single Aggregate Limit, inclusive of defense costs and damages for web-based automobile dealership inventory tracking and valuation solutions, sales management, systems integration, data storage services for others; 12/1/2011 for consulting, design, configuration, equipment acquisition, installation, training, activation, management and support of telemedicine systems

However, in respect of any **claim** or **potential claim** arising out of activities performed by an **acquired entity**, "retroactive date" means the date **you** first acquired such entity, unless otherwise agreed by **us** in writing

"Technology activities" means analysis, design, programming or integration of information systems; data processing; information technology consulting; licensing of computer software; marketing, selling, distributing, installing, maintaining, support and training in the use of electronic or computer related hardware and software, for others; web-based automobile dealership inventory tracking and valuation solutions, sales management, systems integration, data storage services for others; consulting, design, configuration, equipment acquisition, installation, training, activation, management and support of telemedicine systems

"Technology claim" means a **claim** arising in whole or in part from the performance of **technology activities**.

9. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII), Damages, of the policy is amended by adding the following:

"Damages" also does not include:

6. the costs of recall, repair or correction of any **technology activities**.

10. For the purposes of the coverage provided by Section 1 of this endorsement only, DEFINITIONS (Section VIII), You/Your of the policy is deleted and replaced by the following

"You and Your" means

1. The **insured**, any **existing subsidiary** or any **acquired entity**;



| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

2. any person who was, is or becomes a director, officer, trustee, partner in, or employee of the **insured**, any **existing subsidiary** or any **acquired entity** but only in respect to **claims** arising out of the course and scope of their duties as such and in the event of their death, incapacity or bankruptcy, any **claim** against their estates, heirs, legal representatives or assigns shall be considered a **claim** against them;

3. any person or entity that takes legal control of the **insured**, **existing subsidiary** or **acquired entity** upon the insolvency or bankruptcy of the **insured**, **existing subsidiary** or **acquired entity**;

11. For the purposes of the coverage provided by Section 1 of this endorsement only, GENERAL MATTERS (Section IX), Date of Performance of Media Activities, of the policy is deleted in its entirety.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:**     **12/01/2011**



**DECLARATION**

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| Endorsement 5 | **E70.1 Additional Insured Endorsement** |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that the person(s) and/or entity(ies) listed below shall be considered **additional insured (s)** under DEFINITIONS (Section VIII), Additional insured, paragraph 3, of the policy:

DEFINITIONS (Section VIII), Additional insured, paragraph 3, is hereby added as follows:

"Additional insured" also means Wells Fargo Bank, National Association, but only with respect to a **claim** where Wells Fargo Bank, National Association is vicariously liable for a negligent act, error or omission of the **insured, existing subsidiary or acquired entity** in the performance of **technology activities** by the **insured, existing subsidiary or acquired entity**; provided, however, in all events Wells Fargo Bank, National Association shall not mean or be considered an **additional insured** with respect to any actual or alleged liability, award or settlement payment arising out of, in whole or part, its own acts, errors or omissions.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:**    **12/01/2011**



| DECLARATION |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| **Endorsement 6** | **E2386.1 Social Media Extension MM** |
|---|---|
| | In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that with respect to DEFINITIONS (Section VIII), Advertising is deleted in its entirety and replaced with the following: |
| | "Advertising" means advertising, publicity, or promotion in or of **covered media** regardless of the nature or form of such "advertising"  including "advertising"  via any social media  platforms (including but not limited to Facebook, Twitter, LinkedIn or MySpace). |
| | All other terms and conditions remain unchanged. |
| | MED E2386 CW (08/11) |

**Effective Date:    12/01/2011**



# DECLARATION

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| Endorsement 7 | E2404.1 Subpoena Defense Costs Coverage Endorsement |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. WHAT WE WILL PAY (Section IV) of the policy is amended to include the following:

**Payments toward subpoena defense costs**

**We** will pay the reasonable and necessary attorney's fees and legal costs **you** incur in proceedings to quash or challenge the scope of a subpoena ordering **you** to disclose or produce any information or material gathered, acquired, collected, created or compiled by **you**, provided such information or material was gathered, acquired, collected, created or compiled for the purpose of the creation, production or dissemination of **media content** in or for **covered media**, and provided that such subpoena was served on **you** during the **policy period**.

2. For purpose of applying the terms and conditions of WHAT YOU MUST NOTIFY AND WHEN (Section III), HOW MUCH WE WILL PAY (Section V), YOUR OBLIGATIONS TO US (Section VII) and GENERAL MATTERS (Section IX) of the policy to the coverage afforded by this endorsement, wherever the word **claim** appears in such sections, it shall be construed to include a subpoena that falls within the scope of coverage afforded by this endorsement.

3. The coverage afforded by this endorsement is part of and not in addition to the **policy limit.**

4. If a sub-limit is indicated below, the sub-limit is the most **we** will pay under this policy in connection with any one subpoena.  All sub-limits under this endorsement are included within the **policy limit** and are not in addition to the **policy limit**.

Sub-limit: $1,500,000

5. The Retention listed on the Declarations is amended as follows:

**Retention**:
a. $500,000 Each and every **claim** inclusive of **defense costs** and **damages**
b. $100,000     Each and every subpoena

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:**     **12/01/2011**



# DECLARATION

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

| | |
|---|---|
| **Endorsement 8** | **E2405.1 Broad Form Errors and Omissions (BI/PD) Endorsement MM/MAC** |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. WHAT WE WILL NOT PAY (Section VI), paragraph (I), of the policy is deleted in its entirety and replaced with the following:

any bodily injury, including but not limited to death and emotional injury; however, this exclusion will not apply to any portion of a covered **claim** seeking (i) **damages** for emotional anguish or distress; or (ii) bodily injury arising out of the **media content** of **your covered media or advertising**;

2. WHAT WE WILL NOT PAY (Section VI), paragraph (m), of the policy is deleted in it entirety and replaced with the following:

any damage to, or destruction or loss of use of any tangible property; however, this exclusion will not apply to (i) any covered **claim** for trespass, or (ii) property damage arising out of the **media content** of **your covered media or advertising**.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:    12/01/2011**



# DECLARATION

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| | |
|---|---|
| Endorsement 9 | **E2409.1 Reporter's Shield Enhancement Endorsement** |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. The following Endorsement Schedule applies to the coverage as provided by this Endorsement:

Item 1. **Reporters Shield Sublimit**:      $1,000,000 Single Aggregate Limit
Item 2. **Reporters Shield Coinsurance**:   20%
Item 3. **Reporters Shield Retention**:     $100,000 each fine or penalty

2.  WHAT WE WILL PAY (Section IV) is amended to include the following:

**Payments towards protecting your source**

Solely where permissible by law, **we** will pay in excess of the **Reporters Shield Retention** and subject to the **Reporters Shield Coinsurance** any court ordered fines and/or court ordered penalties that are imposed against **you** during the **policy period** for **your** in good faith failing to comply with an order to disclose or produce any information or material gathered, acquired, collected, created or compiled by **you**, provided such information or material was gathered, acquired, collected, created or compiled for the purpose of the creation, production or dissemination of **media content**.

All sub-limits under this endorsement are included within the **policy limit** and are not in addition to the **policy limit**.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

All other terms and conditions remain unchanged.

MED E2409 CW (02/10)

**Effective Date:**    **12/01/2011**



# DECLARATION

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| Endorsement 10 | **E2416.1 Amended Definition of "Acquired Entity" Endorsement** |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. DEFINITIONS (Section VIII), **Acquired entity**, of the policy, is deleted and replaced with the following:

**Acquired entity**

"Acquired entity" means:

1. any entity that the **insured** or **existing subsidiary** directly or indirectly acquires or creates during the **policy period**, but only to the extent that the entity produces the same type of **covered media** as the **insured** or **existing subsidiary** and only if the annual revenue or the total book value of the consideration provided in return for acquiring control of the entity is less than or equal to 150,000,000 at the time of acquisition or creation; it being agreed and understood that at renewal of this policy, **we** shall be entitled to impose such additional premium in connection with these **acquired entity (ies)** which **we** may require;

2. any entity that the **insured** or **existing subsidiary** directly or indirectly acquires or creates during the **policy period** which has an annual revenue of more than 150,000,000, but only if **you** have provided **us** with written notification of the acquisition or creation within 90 days of such, and only if **we** have provided our written consent to insure that entity under this policy, such consent never to be unreasonably withheld, and **you** have agreed to pay such additional premium as **we** may require.

For purposes of this definition, "acquires" means taking ownership of over 50% of the outstanding voting stock or interest, or assets of any business entity.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:**    **12/01/2011**



## DECLARATION

### HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

| | |
|---|---|
| Endorsement 11 | **E2421.2 Spousal, Civil Union & Domestic Partner Extension End MM/MAC** |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

If **you** fall into the class of persons identified in DEFINITIONS (Section VIII), **You/Your**, paragraph 2, of the policy, and a **claim** insured under this policy against **you** includes a **claim** against **your** lawful spouse, lawful civil union partner or domestic partner solely by reason of (i) such person's status as **your** spouse, civil union partner or domestic partner, or (ii) such spouse's, civil union partner's or domestic partner's ownership interest in property which the claimant seeks as recovery for **claims** against **you** arising out of the **insured's media activities**, any sum such spouse, civil union partner or domestic partner becomes legally obligated to pay as **damages** on account of the **claim** shall be treated under the policy as if the sum were **damages you** are required to pay on account of the **claim** against **you**. All limitations, conditions provisions and other terms of the policy applicable to **damages you** become obligated to pay shall also be applicable to such sums **your** spouse, civil union partner or domestic partner becomes obligated to pay. In no event shall the coverage afforded by this endorsement apply to any **claim** arising out of the **media activities** of **your** spouse, civil union partner or domestic partner.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

MED E2421 CW (02/10)

**Effective Date:    12/01/2011**



# DECLARATION

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

| | |
|---|---|
| **Endorsement 12** | **E2430.1 Remove Settlement Clause Endorsement** |

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that GENERAL MATTERS (Section IX), Settlement of Claims, of the policy is deleted in its entirety.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:    12/01/2011**



| DECLARATION |
|---|

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

---

## Policy Number:  US UUA 2619952.11

---

**Endorsement 13**                    **E2444.1 Specific Exclusion Endorsement**

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that the following is added to WHAT WE WILL NOT PAY (Section VI) of the policy:

**We** will not make any payment, including **defense costs** and **damages**, toward any portion(s) of any **claim** for, alleging, or arising from:

auction services, however this exclusion does not apply to any covered media or professional services related to auction services.

The title of this endorsement is solely for ease of reference and forms no part of the terms and conditions of coverage.

**Effective Date:**    **12/01/2011**



## DECLARATION

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

## Policy Number:  US UUA 2619952.11

| | |
|---|---|
| **Endorsement 14** | **E2484.1 Premium Payment Warranty** |
| | Premium payment warranty:  30 days |
| **Effective Date:    12/01/2011** | |



| DECLARATION |
|---|

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

| Endorsement 15 | **E2531.1 First Amendment Enhancement Endorsement MM** |
|---|---|

In consideration of the premium charged and on the understanding that this endorsement leaves all other terms, conditions and exclusions unchanged, it is agreed that:

1. The following Endorsement Schedule applies to this endorsement:

Item 1. **First Amendment Restriction Sublimit**  $1,000,000
Item 2. **First Amendment Restriction co-insurance paid by you**: 20%
Item 3. **Retention**  $500,000
Item 4. **First Amendment Restriction Retention** $100,000

2.  WHAT WE WILL PAY (Section IV) is amended to include the following:

**Payments towards a first amendment restriction**

**We** will pay all reasonable and necessary attorneys' fees and legal costs incurred by **you** to avoid or respond to a **first amendment restriction,** arising out of **your media activities**, that occurs during the **policy period.**

3. For purposes of the coverage afforded by Section 2 of this endorsement only, WHAT WE WILL NOT PAY (Section VI), is amended by deleting exclusions (e) and (m) in their entirety and replacing them with the following:

e. any enforcement of any state or federal regulation, including but not limited to any regulation promulgated by the Federal Trade Commission, Federal Communications Commission, Federal Election Commission or the Securities and Exchange Commission; however, this exclusion shall not apply to coverage afforded by section 2. of the First Amendment Enhancement Endorsement;

m. any damage to, or destruction or loss of use of any tangible property; however, this exclusion will not apply to:

i) any covered **claim** for trespass; or

ii) coverage afforded by section 2. of the First Amendment Enhancement Endorsement.

4.  For purposes of the coverage afforded by Section 2 of this endorsement only, WHAT WE WILL NOT PAY (Section VI) is amended by adding the following:

s.  any proceeding, ruling or order to suspend or revoke a license by the Federal Communications Commission;

t. any actual or alleged violation of the Federal Trade Commission Act or any analagous state law; or

u. any **claim**.

MED E2531 CW  (02/10)

| | DECLARATION |
|---|---|



**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

5. For purposes of the coverage afforded by Section 2 of this endorsement only, DEFINITIONS (Section VIII) is amended to include the following:

**First Amendment Restriction**

"First amendment restriction" means any infringement or threatened infringement by the government of **your** rights and privileges under (a) the speech and press clauses of the First Amendment to the United States Constitution, (b) any analogous State constitutional provision, or (c) any statute, regulation or rule pertaining to the public's right of access to government-held information, including:

    A.  any governmental action restricting **your** access to proceedings, meetings or information;
    B.  any Federal Communications Commission investigation or enforcement of an alleged obscene, profane or indecent broadcast;
    C.  any prior restraint or other limitation on the dissemination of **media content** caused by governmental action; and
    D.  any search and/or seizure of **your** property resulting from or in respect of **media content** or the gathering or production of such **media content**.

6.  For purposes of the coverage afforded by Section 2 of this endorsement only, DEFINITIONS (Section VIII) of the policy is amended by deleting the definition of **You/Your** and replacing it with the following:

"You" and "Your" means:

1. the **insured,** any **existing subsidiary** or any **acquired entity**.

2. any person who was, is or becomes a director, officer, trustee, partner in, or employee of the **insured**, any **existing subsidiary** or any **acquired entity** but only in respect to **claims** arising out of the course and scope of their duties as such and in the event of their death, incapacity or bankruptcy, any **claim** against their estates, heirs, legal representatives or assigns shall be considered a **claim** against them; and

3. any person or entity that takes legal control of the **insured**, **existing subsidiary** or **acquired entity** upon the insolvency or bankruptcy of the **insured**, **existing subsidiary** or **acquired entity.**

7. For the purpose of applying the terms and conditions of WHAT YOU MUST NOTIFY AND WHEN (Section III), HOW MUCH WE WILL PAY (Section V), WHAT WE WILL NOT PAY (Section VI),YOUR OBLIGATIONS TO US (Section VII) and GENERAL MATTERS (Section IX) of the policy to the coverage afforded by this endorsement, wherever the word **claim** appears in such sections, it shall be construed to also reference a **first amendment restriction** that falls within the scope of coverage afforded by this endorsement.

8. The coverage afforded by this endorsement is part of and not in addition to the **policy limit.**

MED E2531 CW  (02/10)



| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

9. If a sub-limit is indicated below, the sub-limit is the most **we** will pay under this policy in connection with a **first amendment restriction**.  The sub-limit is also the maximum **we** will pay in connection with all **first amendment restrictions.** All sub-limits under this endorsement are included within the **policy limit** and are not in addition to the **policy limit**.

Sub-limit: $1,000,000

10. The Retention listed on the Declarations is amended as follows:

**Retention**:
a. $500,000 Each and every **claim** inclusive of **defense costs** and **damages**
b. $100,000     Each and every **first amendment restriction**

11. The coverage afforded by this endorsement is subject to the following co-insurance percentage:

Co-insurance borne by **you**:  20%

The titles and headings of this endorsement are solely for ease of reference and do not form any part of the terms and conditions of coverage.

MED E2531 CW (02/10)

**Effective Date:    12/01/2011**



| | DECLARATION |
|---|---|

## HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

---

**Policy Number:  US UUA 2619952.11**

---

| Endorsement 16 | **E2816.2 Georgia Amendatory Endorsement MM/MAC** |
|---|---|

In consideration for the payment of premium and in reliance on the statements made and information provided to **us**:

1.  YOUR OBLIGATIONS TO US (Section VII), Your Representations, of the policy is deleted in its entirety and replaced with the following:

**You** agree that all representations (whether oral or written) including but not limited to any misrepresentation, omission, concealment of fact, or incorrect statement made by **your** board member(s), executive officer(s), in-house counsel, or risk manager(s) in connection with the application for this policy and all materials submitted by them or on **your** behalf in connection with the application for this policy are true, accurate, and not misleading, and were relied upon by **us** and for **our** decision to issue this policy. Such representation or submitted material may prevent recovery under this policy if:

a.  the representation or submitted material is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by **us**; or

b.   if the true facts had been known to **us** pursuant to a requirement under this policy or other requirement, **we,** in good faith, would not have issued this policy, would have not issued it at the same premium rate, would have not issued it in as large an amount, or would not have provided coverage with respect to the hazard resulting in the **claim**.

In reaching this determination, only facts and knowledge possessed by **your** board member(s), executive officer(s), in-house counsel, or risk manager(s) or any other person whose signature appears on the application, shall be imputed to **you**.

2. DEFINITIONS (Section VIII), Damages of the policy and any endorsement attached thereto is modified to the extent necessary to provide the following:

The Definition of Damages shall specifically include (subject to the policy's other terms, conditions and exclusions) punitive and exemplary damages.

3.   GENERAL MATTERS (Section IX), Other insurance, of the policy is deleted in its entirety and replaced with the following:

This policy is specifically excess of and will not contribute with:

1.  any valid and collectible Multimedia Liability insurance policy;  Marketing, Advertising and Communications Liability insurance policy; Video, Film and Television Producers Liability insurance policy; or similar insurance; or

2.  any valid and collectible insurance under where there is a duty to defend;

whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is specifically in excess of this policy.

If other valid and collectible insurance, other than the valid and collectible insurance described above, permits contribution by equal shares, **we** will follow this method also.

MED E2816 (09/10)



| DECLARATION |
| --- |

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number: US UUA 2619952.11**

If other valid and collectible insurance, other than the valid and collectible insurance described above, does not permit contribution by equal shares, **we** will contribute by limits.

This policy is specifically excess of and will not contribute with any indemnification that may be available to **you** from any entity other than the **insured.**

4.    GENERAL MATTERS (Section IX), Cancellation, of the policy is deleted in its entirety and replaced with the following:

The **insured** may cancel this policy at any time by mailing to **us** written notice stating when such cancellation shall be effective. Any unearned premium will be calculated in accordance with the customary short rate table and procedure.

**We** will only cancel this policy if the premium is not paid by the due date, or **you** intentionally make a material misrepresentation to **us** in regard to any **claim** or notice given to **us** under this policy.

If this policy has been in effect for less than sixty (60) days, **we** will send written notice of cancellation to the **insured** at the last known address by first class mail at least ten (10) days prior to the effective date of cancellation.

If this policy has been in effect for sixty (60) days or more, **we** will send written notice of cancellation to the **insured** at the last known address by first class mail at least thirty (30) days prior to the effective date of cancellation; except at least ten (10) days for non-payment of premium when due.

Proof of mailing shall be sufficient proof of notice.

In the event of cancellation for misrepresentation, **we** will return a pro-rata amount of premium.

In the event **we** cancel this policy, the unearned premium will be tendered to either the **insured** or the broker of record on or before the effective date of cancellation.  Failure to return the unearned premium may entitle the **insured** to eighteen per cent (18%) annual interest until the refund has been made and a penalty fee equal to twenty-five percent (25%) of the unearned premium amount; combined penalty and interest not to exceed fifty percent (50%) of the amount of refund due.  Failure to return any unearned premium will not invalidate a notice of cancellation.

However, If the premium is financed by a premium finance company and this policy is cancelled, then any unearned premium will be tendered to the premium finance company within ten (10) working days after the effective date of cancellation and such action by **us** shall be deemed to satisfy **our** obligation as to the returned of unearned premium.

5. GENERAL MATTERS (Section IX), Alternative dispute resolution is modified to the extent necessary to provide the following:

There can be no arbitration between **us** and the **insured**.  Per O.C.G.A.  9-9-2, arbitration agreements may only exist between the **Insureds** and any claimants against the **Insureds.**

MED E2816 (09/10)



| **DECLARATION** |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

6.    GENERAL MATTERS (Section IX) of the policy is amended to include the following at the end thereof:

Nonrenewal

**We** are not required to renew this policy upon its expiration.  If **we** choose not to renew this policy, **we** will send written notice to the **insured** by first class mail at least forty-five (45) days prior to the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

If the notice of nonrenewal is not provided within the time required, the **insured** may elect to extend this policy for thirty (30) days beyond the expiration date of this policy.  The earned premium for this extension will be calculated pro rata based on the expiring policy's rates and must be tendered or paid to **us** on or before the expiration date of this policy.

Conditional Renewal

If **we** issue a renewal policy conditioned on an increase of premium of more than fifteen percent (15%) or a decrease in coverage, **we** will send to the **insured** written notice of such changed terms by first class mail at least forty-five (45) days prior to the expiration date of this policy.  Proof of mailing is sufficient proof of notice.

If the notice of changed terms is not provided within the time required, the **insured** may elect to extend this policy for thirty (30) days beyond the expiration date of this policy.  The earned premium for this extension will be calculated pro rata based on the expiring policy's rates and must be tendered or paid to **us** on or before the expiration date of this policy.

This provision does not apply if the increase in premium is due to a change in risk of exposure of the **insured**.

7.   If this policy or any endorsement attached thereto is issued on a Claims-Made basis, it is hereby understood and agreed that the policy (as amended by any endorsement attached thereto) is modified to the extent necessary to provide the following:

In the event of cancellation or nonrenewal, **we** will provide, at no additional premium, a period of thirty (30) days, beginning on the effective date of cancellation or nonrenewal during which the **insured** shall be permitted to report to **us claims** first made against **you** during such thirty (30) day period that are for or based upon acts committed or allegedly committed after the applicable **retroactive date** and prior to the effective date of cancellation or nonrenewal and otherwise covered by this policy.  Such extension of coverage shall be referred to as the "Automatic Extended Reporting Period."

8.  If this policy or any endorsement attached thereto is issued with a terrorism exclusion, it is hereby understood and agreed that the policy (as amended by any endorsement attached thereto) is modified to the extent necessary to provide the following:

MED E2816 (09/10)



| DECLARATION |
|---|

**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, IL 60603
(646) 452-2353

**Policy Number:  US UUA 2619952.11**

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1) war, invasion, acts or foreign enemies, hostilities or warlike operation (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2) any **Act of Terrorism.**

For the purpose of this endorsement, an **Act of Terrorism** means any violent act or an act that is dangerous to human life, property or infrastructure, results in damage within the United States and its territories, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission, and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This  exclusion shall apply provided one or more of the following exist(s):

    A.  Total industry wide insured losses exceeds twenty-five million dollars ($25,000,000) for related incidents that occur within a 72-hour period;
    B.  Fifty(50) or more persons sustain death or serious physical injury as a result of related incidents that occur within a 72-hour period;
    C.  The act involves the use, release or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination;
    D.  The act is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials;
    E.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism  was to release such materials.

    For purposes of (B) above, serious physical injury means:
    1.  physical injury that involves a substantial risk of death; or
    2.  protracted and obvious physical disfigurement; or
    3.  protracted loss of or impairment of the function of a bodily member or organ.

All other terms and conditions remain unchanged.

MED E2816 (09/10)

**Effective Date:**   **12/01/2011**



# ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



**NOTICE TO GEORGIA INSUREDS**
O.C.G.A. §33-24-7 – Representations in Applications

---

**GEORGIA POLICYHOLDER NOTICE – ADDENDUM TO THE APPLICATION**

The following is added to the Application and supersedes any language to the contrary, whether contained in the Application, policy or any endorsement thereto:

**SHOULD INSURER ISSUE A POLICY, THE APPLICANT AGREES THAT SUCH POLICY IS ISSUED IN RELIANCE UPON THE TRUTH OF THE STATEMENTS AND REPRESENTATIONS IN THIS APPLICATION OR INCORPORATED BY REFERENCE HEREIN. ANY MISREPRESENTATION, OMISSION, CONCEALMENT OR INCORRECT STATEMENT OF A MATERIAL FACT, IN THIS APPLICATION, INCORPORATED BY REFERENCE OR OTHERWISE, SHALL BE GROUNDS FOR CANCELLATION OF THE POLICY AND/OR DENIAL OF COVERAGE.**



**Hiscox Insurance Company Inc.**

**US TMT Multimedia Liability (Admitted)**
Policy form

Defense costs are within the policy limit

US TMT OCC MM_HICI 01  (A)  (ed. 10/08)

©2006 Hiscox Inc. All rights reserved.



# US TMT Multimedia Liability (Admitted)
Policy form

**About this policy**

**Please note that all sums payable under this policy, including but not limited to all defense cost payments, are included within and are not in addition to the policy limit.  It is also important that you understand the full extent of your and our rights and duties under this policy so we urge you to read the entire policy carefully.  All words and phrases that appear in bold type (except headings) have special meaning and are defined under DEFINITIONS (Section VIII) of this policy.**

**I.   Our promise to you**

**We** will indemnify **you** for **defense costs** and **damages** incurred as a result of a **claim** that falls within WHAT HAS TO GO WRONG (Section II) under this policy, WHAT WE WILL PAY (Section IV) under this policy, and HOW MUCH WE WILL PAY (Section V) under this policy.

**We** will not make any payment in connection with any **claim** unless **we** are notified in accordance with WHAT YOU MUST NOTIFY AND WHEN (Section III) under this policy, the premium and applicable **retention** are paid, and **you** are in compliance with YOUR OBLIGATIONS TO US (Section VII) under this policy.  Also, **we** will not make any payment that is excluded by WHAT WE WILL NOT PAY (Section VI) under this policy.

**II.   What has to go wrong**

Media, personal injury and negligent media content liability

The performance of **media activities** by **you** or anyone on **your** behalf during the **policy period** results in a **claim** against **you** that arises from **covered media** or **advertising**, regardless of when such **claim** is made or where such **claim** is brought, and including but not limited to any **claim** for any actual or alleged:

a.   copyright infringement, trademark infringement, trademark dilution, trade dress infringement, publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off, or any misappropriation of content, formats, characters, trade names, character names, titles, plots, musical compositions, voices, slogans, graphic material or artwork;

b.   breach of a license **you** have acquired to use a third party's trademark and/or copyrighted material, but only to the extent **your** use inadvertently exceeds limitations expressly set forth in the license regarding the territory, duration, or media in which the material may be used and only if such breach is asserted in conjunction with and based on the same factual allegations as a **claim** under (a) above;

c.   plagiarism, piracy, or breach of an implied-in-fact or implied-in-law contract based on **your** use of a third party's creative idea;

d.   defamation, including but not limited to libel, slander, trade libel, product disparagement, and injurious falsehood;

e.   infliction of emotional distress or outrage;

f.   breach of any duty of confidentiality, invasion of privacy or violation of any other legal protections for personal information, including but not limited to false light, intrusion upon a person's seclusion, public disclosure of a person's private information, misappropriation of a person's picture, name, voice or identity for commercial gain, or unauthorized interception or recording of sound or data in violation of a civil anti-wiretap statute;

g.   promissory estoppel or breach of contract brought by **your** newsgathering source, but only to the extent such **claim(s)** directly stem from **your** promise to protect the anonymity of that source;

h.   failure to give credit or attribution of authorship in accordance with any agreement to which **you** are a bound signatory;

i.   unfair competition, deceptive business practices, or false designation of origin, but only when asserted in conjunction with and based on the same factual allegations as a **claim** under (a), (b), (c), (d) or (e) above;

j.   trespass, false arrest, wrongful entry, unlawful detention, false imprisonment, wrongful eviction, eavesdropping, or malicious prosecution;

k.   disclosure of a trade secret, but only where the disclosure alleged was to the public in a newsworthy publication included within **covered media**;



**US TMT Multimedia Liability (Admitted)**
Policy form

l.   negligent supervision of an employee, but only when asserted in conjunction with and based on the same factual allegations as a **claim** under (a), (b), (c), (d), or (e) above; and/or

m.   any form of negligence (including any negligent act, negligent error, negligent omission, negligent misrepresentation, negligent misstatement, including negligent transmission of a computer virus) but only where arising from **your media content** disseminated in **covered media** or **advertising**.

**III.   What you must notify and when**

**You** must notify **us** of **claims** against **you** as soon as practicable.  Proper notification must be sent in accordance with the instructions set forth under the Declarations.

**IV.   What we will pay**

Payments toward defense costs

**We** will pay covered **defense costs** as incurred by **you**.

Payments toward claim resolution

**We** will pay covered **damages** as incurred by **you**.

Payments toward your own declaratory relief actions

**We** will pay reasonable attorney's fees incurred by **you** to prosecute **your** own declaratory relief action if:

a.   a claimant has advised **you**, in writing, that **you** are committing copyright or trademark infringement;

b.   after that claimant has asserted such a written **claim**, and after **you** have filed a declaratory relief action directly in response to that **claim**, the claimant files a counterclaim against **you** alleging copyright or trademark infringement; and

c.   the counterclaim is covered under this policy and pending against **you** while **you** are prosecuting **your** declaratory relief action.

Payments on your behalf

**We** will always advance covered **defense costs**, **damages** and payments toward **your** own declaratory relief actions, as described above, in excess of the applicable **retention**, rather than require **you** to pay those sums in the first instance.

**V.   How much we will pay**

Our maximum payment

The **policy limit** is the maximum **we** will pay under this policy for any single **claim** (inclusive of **defense costs** and **damages)** and the maximum **we** will pay for the total aggregate of all **claims** (inclusive of **defense costs** and **damages**) and all other payments expressly covered under this policy.

Upon payment of the **policy limit**, **our** obligations under this policy shall be completely fulfilled and **we** shall have no further liability of any kind under this policy. At any time, **we** can pay to **you** the remainder of the **policy limit**, after which **we** will have no further liability of any kind under this policy.

**VI.   What we will not pay**

Exclusions

**We** will not make any payment, including **defense costs** and **damages**, toward any portion(s) of any **claim** for, alleging, or arising from:

a.   any infringement or use of a patent;

b.   any misappropriation, use, or disclosure of a trade secret; provided, however, that this exclusion will not apply to any covered portion(s) of any **claim** under WHAT HAS TO GO WRONG (Section II) (k);

c.   any fraudulent or dishonest conduct or willful violation of law, whether committed by **you** or by another whose actions **you** have ratified or condoned; provided, however, that this



## US TMT Multimedia Liability (Admitted)
Policy form

exclusion will not apply:

(i) until such conduct or violation has been established by final decision in a judicial, administrative or alternative dispute resolution proceeding, or by **your** own admission in such a proceeding or otherwise (or by the admission in such a proceeding or otherwise of the person whose actions **you** have ratified or condoned), at which time **you** shall reimburse **us** for all payments made by **us** in connection with any **claim** arising from such conduct or violation of the law and **our** obligations under this policy with respect to such **claim** shall cease; or

(ii) at all if such conduct or violation occurred in connection with **your media activities** for **covered media**, the conduct or violation was approved in advance by **your** legal counsel on the basis of a good faith belief that it would be protected from liability by the First Amendment to the U.S. Constitution, and the **claim** based on the conduct or violation falls under WHAT HAS TO GO WRONG (Section II) (d), (e), (f), (g), (j) or (k);

d. any unfair competition; deceptive trade practices; restraint of trade or violation of any antitrust or consumer fraud statute, legislation or regulation; however, this exclusion will not apply to any covered portion of any **claim** for unfair competition, deceptive trade practices, or false designation of origin under WHAT HAS TO GO WRONG (Section II) (i);

e. any enforcement of any state or federal regulation, including but not limited to any regulation promulgated by the Federal Trade Commission, Federal Communications Commission, Federal Election Commission or the Securities and Exchange Commission;

f. any liability or breach of any duty or obligation owed by **you** due to any statement, representation (express or implied), or omission in respect of **your** financial reports or filings, or directly or indirectly arising from any fiduciary duty owed by **you** or financial advice given by **you**;

g. any liability or breach of any duty or obligation owed by **you** as an employer, including but not limited to any allegation of discrimination, harassment, wrongful termination, or arising from any duty or obligation owed by **you** in connection with the administration of any health, pension, or other form of employee benefit plan;

h. any disputes with any of **your** present or former directors, officers, trustees, partners in **you**, joint venturers, employees, agents, or independent contractors concerning ownership of or the exercise of rights relating to **media content**, material, or services supplied to **you** by any of them;

i. any disputes with any of **your** present or former directors, officers, trustees, partners in **you**, joint venturers, employees, agents, or independent contractors concerning **your** disclosure of their personally identifiable information;

j. **your** provision of any sweepstakes, gambling activities or lotteries or from any over redemption or under redemption of coupons, discounts, awards or prizes from advertisements, promotions, contests or other games of chance; provided however, that this exclusion does not apply to the extent that a **claim** falls under paragraphs (a), (b), (c), (d) or (f) of What Has to Go Wrong (Section II) of the policy;

k. any pollution, contamination, or toxic exposure;

l. any bodily injury, including but not limited to death and emotional injury; however, this exclusion will not apply to any portion of a covered **claim** seeking **damages** for emotional anguish or distress;

m. any damage to, or destruction or loss of use of any tangible property; however, this exclusion will not apply to any covered **claim** for trespass;

n. any intentionally false, fraudulent, deceptive, or misleading **advertising** with respect to **your** own goods or services; and this exclusion shall apply separately from and not be subject to any of the limitations set forth in paragraph (c) above;

o. any breach of any written, oral, express or implied contract or warranty; provided, however, that this exclusion will not apply to any covered liability **assumed under agreement**; to any covered portion(s) of a **claim** under WHAT HAS TO GO WRONG (Section II) (b), (c), (g), (h) or (i); or to any legal obligation **you** would otherwise owe in the absence of such contract or warranty;



# US TMT Multimedia Liability (Admitted)
Policy form

p.  any unauthorized use of or access to **your** computer network or computer code; however, this exclusion will not apply to:

   (i)  any covered portion(s) of a negligence **claim** brought against **you** that is based on **your** negligent transmission of any malicious code but only where arising from **your** **media content** disseminated in **covered media** or **advertising**;

   (ii)  any computer virus, worm, logic bomb, or Trojan horse that was solely and specifically targeted at **your** computer network;

   (iii)  any unauthorized access to or posting of any online content to **your** web site that results in a covered **claim** for defamation, intellectual property infringement, breach of privacy, outrage, infliction of emotional distress, or negligent publication;

q.  any violation of:

   (i)  the CAN-SPAM Act of 2003 or any subsequent amendments to that Act;

   (ii)  the Telephone Consumer Protection Act (TCPA) of 1991 or any subsequent amendments to that Act; or

   (ii)  any other law, regulation or statute relating to unsolicited communication, distribution, sending or transmitting of any communication via telephone or any other electronic or telecommunications device; or

r.  any **claim** that has been or properly could have been the subject of notice to any insurance carrier prior to the **policy period**.

## VII.   Your obligations to us

**Your representations**

**You** agree that all representations (whether oral or written) made by **your** board member(s), executive officer(s), in-house counsel, or risk manager(s) in connection with the application for this policy and all materials submitted by them or on **your** behalf in connection with the application for this policy are true, accurate, and not misleading, and were relied upon by **us** and were material to **our** decision to issue this policy. If **we** determine that such representations or submitted materials were untrue, inaccurate, or misleading, in any material respect, then **we** are entitled to rescind this policy and treat it as if it had never existed.

In reaching this determination, only facts and knowledge possessed by **your** board member(s), executive officer(s), in-house counsel, or risk manager(s) or any other person whose signature appears on the application, shall be imputed to **you**.

**Notifying us of changes to your business**

**You** must promptly tell **us** if **you** materially change **your** business, acquire or merge with another business or if any party acquires **your** business. **We** will only provide coverage under this policy for such a change if **we** have given **our** written approval and **you** have agreed to all additional coverage terms and/or additional premium **we** may request to cover the change in risk. However, **you** have no obligation to notify **us** under this section of any entity that falls within subsection (1) of the definition of **acquired entity** under DEFINITIONS (Section VIII) of this policy.

**Providing us with information and assistance**

**You** shall provide **us** with full, timely and accurate information about any **claim** or declaratory relief action that **you** contend falls within the coverage afforded by this policy.

**You** shall:

1.  give **us**, or anyone appointed by **us**, at **your** expense, such assistance, cooperation and information as **we** reasonably require under this policy, to avoid, minimize, or resolve any **claim**; and

2.  notify **us** as soon as practicable of all settlement offers made by a claimant in connection with any **claim**; and

3.  give **us** all assistance and cooperation **we** reasonably require to pursue at **our** expense any subrogated right of recovery **we** may have in connection with any **claim** or declaratory relief action.



# US TMT Multimedia Liability (Admitted)
Policy form

If **you** or anyone on **your** behalf tries to deceive **us** by deliberately giving **us** false information in connection with such a **claim, then we** will not make any payment arising out of or relating to that **claim**.

| | |
|---|---|
| **Satisfying your retention** | **We** will not make any payment under this policy unless **you** first pay the applicable **retention**. The **retention** shall apply separately to each **claim** unless it is reasonably established that a series of **claims** against **you** directly arise from: |

1. the same original cause, a single source or a repeated or continuing problem in **your media activities**; or

2. a single or continuing investigation or a common set of facts or state of affairs in relation to a defamatory statement;

then all such **claims** that **we** agree are related will be treated as a single **claim** and **you** need only pay a single **retention** and they shall be subject to a single **policy limit**.

Any combination of **defense costs** and **damages** with respect to a **claim** may satisfy the **retention**. The **policy limit** is excess of the **retention.**

| | |
|---|---|
| **Subrogation** | In the event of any payment under this policy, **we** shall be subrogated to all of **your** rights of recovery against any person or entity for such payments and **you** shall fully cooperate with **us** in asserting such rights of recovery, including executing all papers required and by permitting **us** to prosecute an action in **your** name at **our** expense if so requested, and **you** shall do nothing to prejudice such rights. **We** shall have no subrogation rights against **you**. |

Any recovered amounts shall first be applied on a pro-rata basis to **you** and to **us** for sums **you** or **we** incurred to pursue the subrogation action. The remainder of any recovered amounts shall be distributed on a pro-rata basis both to **you** for payments made under the **retention** and to **us** for **our** payments made in excess of the **retention**.

## VIII.  Definitions

All phrases and words that appear in bold type in this policy (excluding headings), either in singular or plural form, have the meaning that is given to them below:

| | |
|---|---|
| Acquired entity | "Acquired entity" means: |

1. any entity that the **insured** or **existing subsidiary** directly or indirectly acquires or creates during the **policy period**, but only to the extent that the entity produces the same type of **covered media** as the **insured** or **existing subsidiary** and only if the annual revenue or the total book value of the consideration provided in return for acquiring control of the entity is less than 10% of the **insured's** annual revenue at the time of acquisition or creation, and, at the time of acquisition or creation, no **claim** exists against such entity that has resulted or is reasonably likely to result in a payment in excess of 50% of the **retention** (including **defense costs**); it being agreed and understood that at renewal of this policy, **we** shall be entitled to impose such additional premium in connection with these **acquired entity(ies)** which **we** may require;

2. any entity that the **insured** or **existing subsidiary** directly or indirectly acquires or creates during the **policy period** which has an annual revenue of more than 10% of the **insured's** annual revenue, but only if **you** have provided **us** with written notification of the acquisition or creation within 90 days of such, and only if **we** have provided **our** written consent to insure that entity under this **policy**, such consent never to be unreasonably withheld, and **you** have agreed to pay such additional premium as **we** may require.

For purposes of this definition, "acquires" means taking ownership of over 50% of the outstanding voting stock or interest, or assets of any business entity.

| | |
|---|---|
| Additional insured | "Additional insured" means: |

1. any third party but only with respect to the **covered media** furnished by **you** to such "additional insured" and arising out of **your media activities**, and only upon the **insured's** written consent following the **insured's** review of a **claim**; or



**US TMT Multimedia Liability (Admitted)**
Policy form

2. any third party, including but not limited to freelancers, correspondents, stringers, photographers, volunteers and "leased employees," commissioned or engaged to provide **media content** by the performance of **media activities** for or on behalf of the **insured**, **existing subsidiary**, or **acquired entity** for **covered media**; but only with respect to **claims** arising out of such **media content** or **media activities** and only upon the **insured's** written consent following the **insured's** review of a **claim**.

| | |
|---|---|
| Advertising | "Advertising" means advertising, publicity, or promotion in or of **covered media**. |
| Assumed under agreement | "Assumed under agreement" means any obligation assumed by the **insured**, **existing subsidiary**, and/or **acquired entity** to hold harmless or indemnify a party against losses directly resulting from the **media content** of **covered media** supplied by the **insured**, **existing subsidiary**, and/or **acquired entity**, but only if such obligation was assumed by the **insured**, **existing subsidiary**, and/or **acquired entity** orally or in writing prior to any such loss being suffered. |
| Claim | "Claim" means any written assertion of liability or any written demand for financial compensation or injunctive relief or any request to toll or waive any applicable statute of limitations; however, "claim" does not mean any criminal proceeding of any kind. |
| Covered media | "Covered media" means the specific media described as "covered media" in the Declarations. |
| Damages | "Damages" means any monetary amount **you** become legally obligated to pay as a result of any judgment, settlement, arbitration award or liability **assumed under agreement**, including punitive and exemplary damages if insurable under applicable law, pre-judgment interest and post-judgment interest or any judgment or award ordering payment of attorney's fees or costs, in connection with a covered **claim** insured under this policy, but not including any: |

1. civil, regulatory or criminal fines, sanctions, taxes, or penalties, including those imposed by any federal, state, or local governmental body or by ASCAP, SESAC, BMI or other similar licensing organizations;

2. the costs of complying with any injunction or other equitable order or equitable judgment;

3. the costs of recalling, correcting, producing, reproducing, or reprinting any **media content** or the costs of any services incurred in connection therewith or any overhead costs, loss of revenue, salaries, wages or any future cost of doing business;

4. past or future royalties or license fees or any payment owed to a licensor under a license; however, this provision will not apply to any covered portion(s) of any trademark and/or copyright **claim** that results in a damage award that is measured by the amount a claimant would have received had **you** paid to license the claimant's infringed work; or

5. disgorgement of profits or restitution of sums to which **you** were not entitled.

In determining the insurability of punitive damages in connection with a claim, this policy shall apply to the fullest extent permitted by the law of any jurisdiction applicable to the **claim**, and it is understood and agreed that **we** will not affirmatively assert that punitive damages are uninsurable if **we** may refrain from doing so under such applicable law.

| | |
|---|---|
| Defense costs | "Defense costs" means: |

1. all reasonable and necessary attorneys' fees and legal costs incurred in responding to a demand for a retraction or correction in connection with a **claim** insured under this policy;

2. all reasonable and necessary attorneys' fees and legal costs incurred investigating, settling, defending and/or appealing a **claim** insured under this policy; and

3. any premiums on attachment or appeal bonds as a result of a **claim** insured under this policy; however, **we** are under no obligation to apply for or furnish such bond.

"Defense costs" does not include any overhead expenses, general business expenses, salaries, or wages incurred by **you** except under prior written consent from **us**.

| | |
|---|---|
| Existing subsidiary | "Existing subsidiary" means any entity in which the **insured** directly or indirectly owns more than 50% of the assets or outstanding voting shares as of the first day of the **policy period** and if the |



**US TMT Multimedia Liability (Admitted)**
Policy form

revenue is included on **your** application for this policy.

| | |
|---|---|
| Insured | "Insured" means the entity identified as "the insured" on the Declarations. |
| Media activities | "Media activities" means: |

1. the gathering, acquisition, investigation, collection, researching, creation and compilation of **media content**;

2. any broadcast, transmission, dissemination, telecast, cablecast, syndication, serialization, podcast, streaming, or production of **media content**;

3. any publication, republication, or dissemination of **media content** including any special editions or supplements to such **media content**;

4. any digital, online, or electronic dissemination of **media content**;

5. the release, distribution, licensing, sale, lease, or exhibition of **media content**;

regardless of the mode or method of communication of such **media content**.

| | |
|---|---|
| Media content | "Media content" means the substance of any communication of any kind whatsoever within **covered media** or **advertising**, regardless of the nature or form of such "media content" or the medium by which such "media content" is communicated, including but not limited to language, data, facts, fiction, music, photographs, images, advertisements, artistic expression, or visual or graphical materials. |
| Policy limit | "Policy limit" means the amount stated as the "policy limit" on the Declarations. |
| Policy period | "Policy period" means the period of time stated as the "policy period" on the Declarations, unless this policy is cancelled, in which case the "policy period" ends on the effective date of cancellation. |
| Retention | "Retention" means the amount stated as the "retention" on the Declarations. |
| We/Us/Our | "We," "Us," and "Our," means the insurance company that provides this insurance. |
| You/Your | "You" and "Your" means: |

1. the **insured,** any **existing subsidiary** or any **acquired entity**;

2. any person who was, is or becomes a director, officer, trustee, partner in, or employee of the **insured**, any **existing subsidiary** or any **acquired entity** but only in respect to **claims** arising out of the course and scope of their duties as such and in the event of their death, incapacity or bankruptcy, any **claim** against their estates, heirs, legal representatives or assigns shall be considered a **claim** against them;

3. any person or entity that takes legal control of the **insured**, **existing subsidiary** or **acquired entity** upon the insolvency or bankruptcy of the **insured**, **existing subsidiary** or **acquired entity**; and

4. any **additional insured**.

## IX.   General matters

| | |
|---|---|
| Defense arrangements | This is a duty to pay policy, not a duty to defend policy.  Therefore, **you** have the duty to defend **claims** on **your** own behalf under this policy.  This means that, if a **claim** is made against **you**, **you** have the responsibility to retain counsel to defend **you**.  **You** have a choice of requesting that **we** consent to **your** retention of qualified counsel, **our** consent not to be unreasonably withheld, or **you** may retain counsel from the Hiscox Media Panel Counsel List.  **You** may settle a **claim** on **your** own behalf and within the applicable **retention** without **our** prior consent. |

**We** shall at all times have the right and opportunity to effectively associate with **you** and **your** counsel in the investigation, defense and settlement of any **claim** under this policy.  While **we** do not have the duty to defend **you**, **we** have the right and option to assume the defense of a **claim** against **you** if **you** fail to comply with any of YOUR OBLIGATIONS TO US (Section VII) under this policy.

**We** will not make any payment in excess of the applicable **retention**, unless such **defense costs**



## US TMT Multimedia Liability (Admitted)
Policy form

or **damages** payments are incurred with **our** prior consent.

**You** may not admit any liability for, make any settlement offer with respect to, or settle any **claim** in excess of the applicable **retention** without **our** prior consent.

**We** will not make any payments of any kind on account of any portion(s) of **claims** or declaratory relief actions not covered under this policy, nor will such payments by **you** apply to satisfy any applicable **retention**.  **We** and **you** agree to use best efforts to determine a fair allocation of payments (including **defense costs** and **damages**) between portion(s) of **claims** that are covered under this policy and portion(s) that are not covered under this policy.  If a fair allocation cannot be agreed upon, **we** and **you** shall submit the issue to an alternative dispute resolution proceeding in accordance with the Alternative Dispute Resolution provision set forth in GENERAL MATTERS (Section IX) of this policy.  During the alternative dispute resolution proceeding, **we** shall be obligated to pay only that portion of any **defense costs** or **damages** that **we** in good faith believe is properly allocated to **us**.

Settlement of claims

If a situation arises where **we** have a good faith belief that a claimant's monetary offer to settle a covered **claim** is reasonable when **you** do not, then **we** will neither compel **you** to accept the settlement offer nor will **we** cease providing coverage for such a **claim** merely because **you** did not accept the offer. However, if **we** recommend that **you** do accept such an offer and **you** elect not to, then **our** maximum payment toward that particular **claim** following the rejection or expiration of that offer will be the outstanding covered **defense costs** incurred up to the date the settlement offer was rejected or expired, plus the amount of the unaccepted settlement offer, minus **your** remaining **retention** on the day the settlement offer is rejected or expires. If this amount is in excess of the **retention**, then at **your** request and subject to **our** discretion **we** will pay this amount to **you** in a lump payment in return for **you** fully releasing **us** from all liability with respect to the unsettled **claim**.

In exchange for this release, **we** will not seek reimbursement for any portion of **our claim** payment to **you**, even if the **claim** is later resolved for less than the amount **we** paid to **you**.

Date of performance of media activities

For purposes of this policy, relevant **media activities** shall all be deemed to have been performed on the date of first dissemination of **your media content** that is the subject of any **claim**. Where a **claim** is made but there has not yet been dissemination of **your media content**, then the relevant **media activities** shall all be deemed to have been performed on the date of the first act in preparation for dissemination of **your media content**, such as the first act of gathering, acquiring or otherwise preparing **your media content** for dissemination.

For purposes of determining the date of performance of relevant **media activities**, where a **claim** or multiple **claims** arise from a series of the same, or substantially the same factually or logically related events, such as multiple broadcasts of the same television advertisement or multiple acts in the course of preparation of the same **media content**, they will all be deemed to have been performed on the date of the very first dissemination or act in preparation of such **media content** and, if such date falls within the **policy period**, they will be treated as related **claims** subject to a single **retention** and a single **policy limit**.

**We** shall have no obligation under this policy to pay any portion of any **claim** or related **claims** that is attributable to relevant **media activities** in or for **your covered media** that were performed or are deemed by operation of this provision to have been performed prior to or after the **policy period**. In no event shall a series of **media activities** giving rise to a **claim** or related **claims** trigger any obligations by **us** under more than one policy issued by **us**.

Confidential sources

**Your** rights under this policy shall not be prejudiced by **your** refusal to reveal the identity of a confidential source, the accidental or unintentional identification of a confidential source, or **your** refusal to produce reporter's notes or any other documents or information **you** obtain in the course of **your media activities** with respect to which **you** have asserted a reporter's privilege or its equivalent under the First Amendment, statute or common law.

Retractions and corrections

**You** shall maintain sole discretion as respects the retraction or correction of **media content** in **your covered media**.

Other insurance

Any payment due under this policy is specifically excess of and will not contribute with any other valid insurance, regardless if the insurance is collectible or not, unless such other insurance is specifically stated to be in excess of this policy. This policy is not subject to the terms set forth in



**US TMT Multimedia Liability (Admitted)**
Policy form

any other insurance policy.

| | |
|---|---|
| Cancellation | The **insured** may cancel this policy at any time by mailing to **us** written notice stating when such cancellation shall be effective. Any unearned premium will be calculated in accordance with the customary short rate table and procedure. |
| | **We** will only cancel this policy if the premium is not paid by the due date, or **you** intentionally make a material misrepresentation to **us** in regard to any **claim** or notice given to **us** under this policy, in which case **we** will provide to the **insured** notice of cancellation in accordance with applicable law. In the event of cancellation for misrepresentation, **we** will return a pro-rata amount of premium unless a **claim** has been made or is pending under this policy before such cancellation takes effect. |
| | **We** are not required to renew this policy upon its expiration. |
| Severability | If a board member, executive officer, in-house counsel, or risk manager of the **insured**, an **existing subsidiary** or an **acquired entity** breaches a condition of or obligation under the policy, their breach shall be attributable to themselves and to all of **you**. If a condition of or obligation under the policy is breached by a person or entity who is not a board member, executive officer, in-house counsel, or risk manager, their breach shall be attributable only to themselves and to any persons among **you** who have condoned, ratified or remained passive after learning of such breach, but not to any of the others of **you**. |
| Alternative dispute resolution | **We** and **you** agree that any dispute arising out of or relating to this policy, including but not limited to its construction, application and validity, or any breach thereof, shall be resolved through either non-binding mediation or binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA") in effect at the time of the dispute, as amended by this policy. Either **you** or **we** may elect the type of Alternative Dispute Resolution ("ADR") to resolve a dispute under this policy. However, **you** have the right to reject **our** choice of ADR process at any time prior to its commencement, in which case **your** preferred choice of either non-binding mediation or binding arbitration shall control. If the first ADR process commenced for a particular dispute is an unsuccessful non-binding mediation, then **you** and **we** agree that such dispute shall only be resolved through binding arbitration in accordance with this provision and that such arbitration proceeding shall not be commenced until a 60-day cooling off period following the last date of the failed mediation has first elapsed. |
| | Each party shall bear its own fees and costs in connection with any arbitration, but the costs incurred through AAA, including the fees and expenses of the arbitrator, shall be shared equally by the parties unless the arbitration award provides otherwise. No award of punitive damages shall be made in any arbitration. All arbitration proceedings shall be held only in a city where either **you** or **we** have a place of business in the United States, at the election of the party commencing arbitration. The decision of the arbitrator or arbitrators is final and binding and any award may be confirmed and enforced in any court of competent jurisdiction. |
| Bankruptcy or insolvency | **Your** bankruptcy or insolvency shall not relieve **us** of any of **our** obligations under this policy. |
| Currency | All references to dollar amounts in this policy are references to and payable in the currency of the United States of America. |